UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHERINE COFFMAN, <br><br> Plaintiff, <br><br> vs. <br><br> CYRUSONE INC., ALEX SHUMATE, DAVID H. FERDMAN, JOHN W. GAMBLE, JR., T. TOD NIELSEN, DENISE OLSEN, WILLIAM E. SULLIVAN, and LYNN A. WENTWORTH, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Catherine Coffman ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against CyrusOne Inc. ("CyrusOne" or the "Company") and the members of CyrusOne's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which CyrusOne will be acquired by funds affiliated with Kohlberg Kravis Roberts & Co. L.P. ("KKR") and Global Infrastructure Management, LLC ("GIP"), through their subsidiaries Cavalry Parent L.P. ("Parent") and Cavalry Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").

2. On November 15, 2021, CyrusOne, KKR, and GIP issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated November 14, 2021 (the "Merger Agreement") to sell CyrusOne to KKR and GIP. Under the terms of the Merger Agreement, CyrusOne shareholders will receive $90.50 in cash for each share of CyrusOne common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $15 billion.

3. On December 30, 2021, CyrusOne filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that CyrusOne stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses performed by one of the Company's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley"); (ii) potential conflicts of interest faced by the Company's financial advisors, Morgan Stanley and DH Capital, LLC ("DH Capital"), and Company insiders; and (iii) the background leading up to the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, CyrusOne's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates two data center locations in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CyrusOne.

9. Defendant CyrusOne is a Maryland corporation, with its principal executive offices located at 2850 N. Harwood Street, Suite 2200, Dallas, Texas 75201.  The Company is a premier global real estate investment trust ("REIT") specializing in design, construction and operation of more than 50 high-performance data centers worldwide.  CyrusOne maintains and operates data center facilities in Totowa and Somerset, New Jersey.  CyrusOne's common stock trades on the Nasdaq Global Select Market under the ticker symbol "CONE."

10. Defendant Alex Shumate ("Shumate") is the Company's Lead Independent Director, and has been a director of the Company since 2013.

11. Defendant David H. Ferdman ("Ferdman") has been interim President and Chief Executive Officer ("CEO") of the Company since June 30, 2021, and a director of the Company since 2013.

12. Defendant John W. Gamble, Jr. ("Gamble") has been a director of the Company since 2014.

13. Defendant T. Tod Nielsen ("Nielsen") has been a director of the Company since 2013.

14. Defendant Denise Olsen ("Olsen") has been a director of the Company since 2021.

15. Defendant William E. Sullivan ("Sullivan") has been a director of the Company since 2013.

16. Defendant Lynn A. Wentworth ("Wentworth") is Chair of the Board and has been a director of the Company since 2014.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. KKR is a leading global investment firm that offers alternative asset management and capital markets and insurance solutions. KKR sponsors investment funds that invest in private equity, credit and real assets and has strategic partners that manage hedge funds. KKR's insurance subsidiaries offer retirement, life and reinsurance products under the management of The Global Atlantic Financial Group.

19. GIP is one of the world's leading infrastructure investors. The funds and investment platforms managed by GIP make equity and debt investments in infrastructure assets and businesses in both Organization for Economic Co-operation and Development countries and

selected emerging market countries, targeting investments in the energy, transport, digital, water / waste and infrastructure sectors.

20. Parent is a Delaware limited partnership that will be controlled by funds affiliated with KKR and GIP.

21. Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22. CyrusOne is a fully integrated, self-managed data center REIT that owns, operates and develops enterprise-class, carrier-neutral, multi-tenant and single-tenant data center properties. The Company's data centers are generally purpose-built facilities with redundant power and cooling. They are not network specific and enable customer connectivity to a range of telecommunication carriers. The Company provides mission-critical data center real estate assets that protect and ensure the continued operation of information technology infrastructure for approximately 1,000 customers in more than 50 high-performance data centers in 16 markets world-wide (11 cities in the U.S.; London, U.K.; Frankfurt, Germany; Amsterdam, The Netherlands; Dublin, Ireland and Paris, France).

23. Currently, CyrusOne customers include 191 of the Fortune 1000 companies as well as nine of the Fortune 20 or private or foreign enterprises of equivalent size, together representing approximately 79% of annualized rent as of December 31, 2020. CyrusOne's growth over the past 16 years has made it the third-largest data center provider in the U.S. based on the National Association of Real Estate Investment Trusts ("NAREIT") REITWatch report as of November 30, 2020.

24.     On October 27, 2021, CyrusOne announced its third quarter 2021 financial results. Revenue was $304.1 million, compared to $262.8 million for the same period in 2020, an increase of 16%. Net income was $6.7 million, compared to a net loss of $(37.3) million in the same period in 2020. Net operating income was $170.7 million, compared to $153.1 million in the same period in 2020, an increase of 11%. Adjusted EBITDA was $149.2 million for the third quarter, compared to $132.2 million in the same period in 2020, an increase of 13%. Normalized Funds from Operations ("Normalized FFO") was $127.2 million, compared to $114.4 million in the same period in 2020, an increase of 11%. Reflecting on the Company's results, defendant Ferdman stated:

> We had strong financial results and another good bookings quarter, including a significant contribution from our European markets and healthy pricing across the leases. The demand environment remains strong, we continue to have productive discussions with our customers, and we are well positioned with capacity across the portfolio and more than $2 billion of available liquidity to support our growth.

**The Proposed Transaction**

25.     On November 15, 2021, CyrusOne, KKR, and GIP issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> DALLAS--Nov. 15, 2021-- CyrusOne Inc. (NASDAQ: CONE) (the "Company" or "CyrusOne"), a premier global data center REIT, KKR, a leading global investment firm, and Global Infrastructure Partners ("GIP"), one of the world's leading infrastructure investors, today announced a definitive agreement pursuant to which KKR and GIP will acquire all outstanding shares of common stock of CyrusOne for $90.50 per share in an all-cash transaction valued at approximately $15 billion, including the assumption of debt.
>
> The $90.50 per share purchase price reflects a premium of approximately 25% to CyrusOne's unaffected closing stock price on September 27, 2021, the last full trading day prior to published market speculation regarding a potential sale of the Company.
>
> "This transaction is a testament to the tremendous work by the entire CyrusOne team. We have built one of the world's leading data center companies with a presence across key U.S. and international markets supporting our customers' mission-critical digital infrastructure requirements while creating significant value

for our stockholders," said Dave Ferdman, Co-Founder and interim President and Chief Executive Officer of CyrusOne. "KKR and GIP will provide substantial additional resources and expertise to accelerate our global expansion and help us deliver the timely and reliable solutions at scale that our customers value."

"Today's announcement is the culmination of a robust strategic review process conducted by the CyrusOne Board of Directors to determine the best path forward for the Company and maximize stockholder value," said Lynn Wentworth, Chair of the CyrusOne Board of Directors. "This transaction provides CyrusOne stockholders with significant value and simultaneously positions the Company to even better serve its customers to meet their needs in key markets around the world."

"CyrusOne has built one of the strongest data center companies in the world and has a strong track record of development and operational expertise in addition to delivering best-in-class service to its customers. We are excited to work together with the Company's proven team to build on CyrusOne's market leadership and support their customers' growing data center infrastructure requirements," said Waldemar Szlezak, Managing Director at KKR, and Will Brilliant, Partner at GIP. "We see numerous opportunities ahead to continue expanding CyrusOne's footprint across key global digital gateway markets and look forward to leveraging our global resources, access to long term capital and deep expertise to support the Company's growth."

**Transaction Approvals and Timing**

The transaction, which was unanimously approved by the CyrusOne Board of Directors, is not subject to a financing condition and is expected to close in the second quarter of 2022, subject to satisfaction of customary closing conditions, including regulatory approvals and approval by CyrusOne stockholders.

Upon completion of the transaction, CyrusOne will be a privately held company wholly owned by KKR and GIP and CyrusOne's common stock will no longer be listed on any public market. KKR's investment is being made primarily from its global infrastructure and real estate equity strategies, and GIP's investment is being made from its global infrastructure funds.

**Advisors**

Morgan Stanley & Co. LLC and DH Capital, LLC are acting as financial advisors to CyrusOne and Cravath, Swaine & Moore LLP, Venable LLP and Eversheds Sutherland (International) LLP are acting as its legal counsel.

Goldman Sachs & Co., Barclays, Wells Fargo Securities, LLC, Citigroup and J.P. Morgan are acting as financial advisors to KKR and GIP, with KKR Capital Markets leading the structuring on the financing. Kirkland & Ellis LLP and Dentons

(UK & Europe) are acting as legal counsel to the acquiring consortium and KKR, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel to GIP.

**Insiders' Interests in the Proposed Transaction**

26. CyrusOne insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of CyrusOne.

27. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with KKR and GIP. Under the terms of the Merger Agreement, upon closing of the merger, all restricted stock units ("RSUs") and partnership units of CyrusOne LP ("LTIP units") granted before execution of the Merger Agreement will vest and convert into the right to receive cash payments. The following table sets forth the value of cash payments that Company insiders will receive in connection with their RSUs and LTIP units upon closing of the Proposed Transaction:

| Name[1] | Company RSUs[2] ($) | LTIP Units[2] ($) | Total ($) |
|---|---|---|---|
| *Executive Officers* | | | |
| David Ferdman | — | — | — |
| Katherine Motlagh | — | 2,994,374 | 2,994,374 |
| John Hatem | — | 3,293,476 | 3,293,476 |
| Robert Jackson | 1,964,574 | 2,694,638 | 4,659,212 |
| *Former Executive Officers*[3] | 7,056,014 | 2,555,901 | 9,611,915 |

28. Further, in connection with the Proposed Transaction, CyrusOne has established a cash-based deal retention bonus program for the benefit of certain Company employees in accordance with the terms of the Merger Agreement. Pursuant to the program, defendant Ferdman and Messrs. Hatem and Jackson and Ms. Motlagh received deal retention bonuses in amounts equal to $4,000,000, $1,000,000, $1,000,000 and $500,000, respectively.

29.     Additionally, if they are terminated in connection with the Proposed Transaction, CyrusOne's named executive officers stand to receive substantial severance payments as set forth in the following table:

| Name[1] | Cash ($)[2] | Equity ($)[3] | Perquisites / Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| David Ferdman | 4,000,000 | — | — | 4,000,000 |
| Katherine Motlagh | 2,759,485 | 2,994,374 | 26,099 | 5,779,958 |
| John Hatem | 3,033,537 | 3,293,476 | 24,464 | 6,351,477 |
| Robert Jackson | 2,784,993 | 4,659,212 | 25,689 | 7,469,894 |

**The Proxy Statement Contains Material Misstatements and Omissions**

30.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to CyrusOne's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

31.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses performed by one of the Company's financial advisors Morgan Stanley; (ii) potential conflicts of interest faced by the Company's financial advisors, Morgan Stanley and DH Capital, and Company insiders; and (iii) the background leading up to the Proposed Transaction. Accordingly, CyrusOne stockholders are being asked to vote in favor of the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning CyrusOne's Financial Projections and Morgan Stanley's Financial Analyses*

32.     The Proxy Statement fails to disclose material information concerning the Company's financial projections.

33. For example, the Proxy Statement fails to disclose all line items underlying the calculation of: (i) Net Operating Income; (ii) Adjusted EBITDA; (iii) Normalized FFO; and (iii) Unlevered Free Cash Flow.

34. The Proxy Statement also fails to disclose material information concerning Morgan Stanley's financial analyses.

35. The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, CyrusOne's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to CyrusOne's stockholders.

36. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 5.6% to 6.4%; and (ii) quantification of the terminal values of the Company.

37. With respect to Morgan Stanley's *Analyst Price Target Analysis* and *Net Asset Value* analysis, the Proxy Statement fails to disclose the individual price targets and net asset value estimates observed and the sources thereof.

38. With respect to Morgan Stanley's *Comparative Public Trading Multiples Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the companies analyzed; and (ii) the Company's 2022E EBITDA used by Morgan Stanley in the analysis.

39. With respect to Morgan Stanley's *Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions analyzed by Morgan Stanley.

40. With respect to Morgan Stanley's *Precedent Premiums Paid Analysis*, the Proxy Statement fails to disclose the individual premiums for each of the transactions analyzed by Morgan Stanley.

41. The omission of this information renders the statements in the "Financial Forecasts" and "Opinion of the Company's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Morgan Stanley's, DH Capital's and Company Insiders' Potential Conflicts of Interest*

42. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisors, Morgan Stanley and DH Capital.

43. The Proxy Statement sets forth, "[i]n the two years prior to the date of its opinion, Morgan Stanley and its affiliates have provided financing services for the Company and financial advisory and financing services to Parent and its affiliates, including affiliates of KKR and GIP, and have received fees in connection with such services." Proxy Statement at 56. The Proxy Statement fails, however, to disclose the specific services that Morgan Stanley and its affiliates provided to CyrusOne, Parent and its affiliates, including affiliates of KKR and GIP, and a quantification of the fees received in connection with such services.

44. With respect to DH Capital's potential conflicts of interest, the Proxy Statement fails to disclose (i) the amount of compensation DH Capital has received or will receive in connection with its engagement; (ii) the amount of DH Capital's compensation that is contingent upon the consummation of the Proposed Transaction; and (iii) the details of any past services DH

Capital has performed for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services as well as the amount of compensation received by DH Capital for providing such services.

45. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by CyrusOne insiders.

46. The Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between KKR or GIP and CyrusOne's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of KKR or GIP's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

47. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48. The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

49. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

50. For example, the Recommendation Statement fails to disclose whether the non-disclosure agreements that CyrusOne entered into with 11 potential acquirers identified in the Proxy Statement as Parties A, B, C, D, and E, as well as KKR, and any other parties during the sale process, include "don't-ask, don't-waive" ("DADW") standstill provisions that are presently precluding these potential counterparties from submitting a topping bid for the Company.

51. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if the action has been done, is omitted from the Proxy Statement.

52. The disclosure of the terms of these non-disclosure agreements is crucial to CyrusOne stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

53. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

54. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of CyrusOne will be unable to make a sufficiently informed voting decision in connection with the

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

55. Plaintiff repeats all previous allegations as if set forth in full.

56. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

57. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the financial analyses performed by one of the Company's financial advisors, potential conflicts of interest faced by the Company's financial advisors and Company insiders, and the background of the sale process. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

58. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

59. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

60. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

61. Plaintiff repeats all previous allegations as if set forth in full.

62. The Individual Defendants acted as controlling persons of CyrusOne within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of CyrusOne, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

65. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CyrusOne's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of CyrusOne, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to CyrusOne stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 11, 2022

**WEISSLAW LLP**

By /**s**/ *Mark D. Smilow*
Mark. D. Smilow
305 Broadway, 7th Floor
New York, NY 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com
    -and-
Richard A. Acocelli (to be admitted *pro hac vice*)
305 Broadway, 7th Floor
New York, NY 10007
Tel: (212) 682-3025
Fax: (212) 682-3010 Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*